<u>**NOT FOR PUBLICATION**</u>


UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   ROSA V. ALONSO, Debtor                 Chapter 7
                                                 Case No. 11-19198 (RG)
- - - - - - - - - - - - - - - - - - - - - - - - - -X

AUREA SUAREZ,
                                                 Adversary Proceeding
            Plaintiff,                           Case No.11-2190 (RTL)
        v.

ROSA V. ALONSO,

            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - -X

<u>**OPINION**</u>

**APPEARANCES:**

McCarter & English, LLP
Joseph Lubertazzi, Jr., Esq.
Alyse M. Aruch, Esq.
Attorneys for Plaintiff

Baum & Bailey, P.C.
Christopher James Baum, Esq.
Attorney for Defendant


<u>**RAYMOND T. LYONS, U.S.B.J.**</u>

<u>**INTRODUCTION**</u>

Plaintiff seeks a judgment denying the Debtor a discharge under 11 U.S.C. § 727(a)(2) –

(6) primarily because the Debtor's schedules confuse the assets, liabilities, income and expenses of

her wholly-owned corporation with her personal financial information.   The court finds that any

1

errors on the Debtor's schedules and statement of financial affairs were not intentional and that her

testimony has been truthful.   A judgment of no cause to deny discharge will be entered in favor of

the Debtor and an order for discharge shall be entered forthwith.

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28

U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the

District of New Jersey dated July 23, 1984, as Amended on September 18, 2012, referring all

proceedings arising under Title 11 of the United States Code to the bankruptcy court.   This is a

core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J) objections to discharge.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Rosa V. Alonso (the "Debtor") filed a voluntary petition under chapter 7 of the Bankruptcy

Code on March 28, 2011.   Plaintiff, Aurea Suarez, is a creditor by reason of the Debtor's guaranty

of a loan to her business.

Debtor is a highly educated and experienced business person.   She received a bachelor's

degree and a master's in business administration with a specialty in marketing from prestigious

universities in New York.   After receiving her MBA in 1994, she worked in marketing until she

started her own business in early 2007.   The business concept was to establish an English

language website geared to the Latino market and to sell advertising as the revenue source.   The

Debtor formed a corporation in January, 2007 named Mi Apogeo, Inc. (the "Company") and

became the sole owner.   The Company started a website called My Latino Voice.   Funding came

from the Debtor's savings and a line of credit secured by her residence.   She also owns an

December 4, 2012 (10:53AM)

apartment next to her residence that she rents out.   She purchased that for cash but took out a

mortgage when she started the Company and invested the mortgage proceeds in the Company.

The Debtor estimates that she invested several hundred thousand dollars in the Company.   The

Debtor's parents lent $35,000 and an editor who worked with her (the "Editor") lent $100,000 to

the Company secured by all the Company's assets.

                The Debtor drew no salary or other compensation from the Company.   She used

her savings, IRA and line of credit for her household expenses while trying to get the business off

the ground.   Occasionally, the Debtor used the Company credit card for personal expenses such as

groceries.   On the Company's tax returns, the accountant treated those personal items as

repayment of loans.

      Although the website was able to generate some advertising revenue, the Company never

earned a profit.   Net operating losses were in the hundreds of thousands of dollars.   In December

2008, Plaintiff loaned $242,000 to the Company.   Because the Company's assets had been

pledged to the Debtor's parents and the Editor, the Debtor agreed to guarantee the loan and grant a

junior lien on her residence.   The source of Plaintiff's loan to the Company was a mortgage she

obtained on her residence.   The Company made monthly payments to Plaintiff equal to the

amount of her mortgage payments.

      The Company operated with all formalities.   It had separate bank accounts, computerized

books and records and filed state and federal tax returns.   It also engaged outside counsel and a

certified public accountant.   Nevertheless, the Company continued to lose money.   Plaintiff's

loan matured in December 2010 and when the Company failed to pay, Plaintiff initiated suit in

December 4, 2012 (10:53AM)

New York State court against the Company and the Debtor.[1]

In a January 2011, the Debtor sought counsel from a New York bankruptcy attorney (the "NY Bk Atty") regarding her corporate and personal financial problems. She supplied him with extensive documentation regarding her business and personal financial affairs including all the loan documents with her parents, the Editor and the Plaintiff, and financial information from the Company's CPA. The NY Bk Atty determined that, although the Company had signed security agreements with the Debtor's parents and the Editor, the security interests were not perfected by the filing of UCC-1 financing statements. The Debtor relayed this information to the Company's attorney as well as her parents and the Editor. The Company's attorney prepared and filed the appropriate financing statements.

The NY Bk Atty recommended that the Debtor file personal bankruptcy. He agreed to prepare all documents needed for her bankruptcy filing including the petition, schedules and statement of financial affairs. He charged $6,699 for his services, which the Debtor paid. The NY Bk Atty prepared all the bankruptcy documents and sent them to the Debtor for signature. She reviewed them, signed where required, and returned them to the NY Bk Atty. Since the Debtor is a New Jersey resident, the NY Bk Atty arranged for a New Jersey bankruptcy attorney ("NJ Bk Atty") to sign and file the petition using this court's electronic filing system. The NJ Bk Atty reviewed the bankruptcy papers but did not meet with the Debtor or review any supporting documentation before filing the petition. She agreed to accept a fee of $500 for her services including attending the hearing required under section 341(a) of the Bankruptcy Code.[2]

---

[1] The suit against the Debtor was stayed by her bankruptcy. Plaintiff received a judgment by default against the Company but has failed to pursue collection against the Company's assets.

[2] The Disclosure of Compensation Of Attorney For Debtor(s) filed with the petition and signed by the NJ Bk Atty reflects the fee of $6,699.00 paid by the Debtor but fails to disclose the involvement of the NY Bk Atty nor the fee

December 4, 2012 (10:53AM)

The Debtor's original schedules disclose the following information that the Plaintiff has called into question.   Schedule B – Personal Property - discloses Debtor's ownership of the stock in Mi Apogeo, Inc. with a value of $75,000.00 and a notation "Subject to two (2) liens totaling $135,000."   No entry was made on Schedule B for a loan receivable from the Company. Schedule C – Property Claimed As Exempt – lists the stock in Mi Apogeo, Inc. as exempt under 11 U.S.C. § 522(d)(5) at "Full fair market value (FMV)" with a value of $75,000.00.   Schedule D – Creditors Holding Secured Claims – lists the Debtor's parents and the Editor as having liens on the stock in the Company.   Schedule I - Current Income of Individual Debtors - discloses as the Debtor's primary source of income $12,500 per month as regular income from operation of a business.   The form requests that a detailed statement of this business income be attached, but none was.   Schedule J – Current Expenditures of Individual Debtors - claims regular expenses from operation of a business $10,719 per month.   Again the form requests a detailed statement of these business expenses, but none was attached.   On Form B22A - Chapter 7 Statement of Current Monthly Income and Means-Test Calculation - the Debtor disclosed $1,781.00 on the line for gross wages, salary, tips, bonuses, overtime, commissions and $21,372.00 as Annualized Current Monthly Income for § 707(b)(7).

The Debtor testified at the 341(a) meeting presided over by the chapter 7 trustee.   In response to the trustee's question as to whether anyone had ever offered money for her stock in the Company, the Debtor answered, "No".   Plaintiff also attended the 341(a) meeting and followed up by asking if someone had offered one million dollars for the Company.   The Debtor testified that the statement was totally in jest.

---

sharing arrangement.   To the contrary, the NJ Bk Atty certified, "I have not agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm."

December 4, 2012 (10:53AM)

Plaintiff issued a subpoena under Bankruptcy Rule 2004, requiring the Debtor to appear for an examination and to produce certain documentation. The Debtor gathered much of the information requested including banking records and income tax returns for herself and the Company. The documents amounted to thousands of pages and were too voluminous to attach to an email, so the Debtor used an internet service known as Drop Box to deposit all the documents so they could be accessed by her NJ Bk Atty. The NJ Bk Atty forwarded all the documentation to Plaintiff's attorney. The Debtor appeared for her examination under Rule 2004 on June 30, 2011. During the examination the Debtor was asked to identify the customers who had paid for advertising on the Company's website. The Debtor described several customers who had advertised during the previous year. When a question was asked about advertising customers from 2009, the NJ Bk Atty objected claiming that was irrelevant because it was too remote in time. Following the examination, by letter dated July 11, 2011, Plaintiff requested substantial additional documentation plus the names of all advertising customers and the amounts they paid for 2009, 2010 and 2011.

Before the Debtor could respond to the July 11th letter, on August 1, 2011, Plaintiff filed an adversary complaint objecting to discharge under 11 U.S.C. § 727(a)(2) – (6). Debtor answered through her NJ Bk Atty. In addition, on September 15, 2011, the Debtor supplied the additional documentation requested in the July 11th letter through her NJ Bk Atty. In regard to the request for the names and amount of advertising revenue from particular customers the NJ Bk Atty responded, "This request has been objected to previously."

A short time after the answer was filed, the Debtor retained a new attorney to represent her in the bankruptcy case and in defending the adversary proceeding. With the assistance of new

6

counsel, Debtor filed an amended Schedule B that deleted any reference to the UCC liens against her stock in the Company and an amended Schedule D that omitted her parents and the Editor as secured creditors.   She also filed amended Schedules I and J that attached detailed statements of the monthly income and expenses of the Company.   The Debtor was deposed in this adversary proceeding on November 16, 2011.

The Debtor moved for summary judgment and the Plaintiff responded with a cross motion for summary judgment.   The court denied both motions because of the existence of genuine issues of material fact, especially the Debtor's intent.   The court agreed to treat the pleading filed in the summary judgment motions as a substitute for proposed findings of fact, conclusions of law and trial briefs.

At trial Plaintiff called only two witnesses:   the Debtor and the NJ Bk Atty.   The court finds the Debtor to be a credible witness.   She was attentive, answered quickly and articulately, and was not evasive.   She readily acknowledged errors on her bankruptcy schedules.   With regard to the listing of her stock in the Company as being subject to UCC liens on Schedules B and D, the Debtor agreed that her original schedules were not accurate; however, she gave her NY Bk Atty all the information regarding the loans to the Company from her parents and friend.   She trusted that the lawyer correctly reported that information, although now it is apparent that he did not do so.   In response to a suggestion by Plaintiff's attorney that she was trying to shield the Company from her creditors and intended to reap profits from it after bankruptcy, the Debtor denied that she intended to hinder, defraud or delay her creditors.   Although she had hope that her business might still succeed, at the time she filed bankruptcy she was searching for another job and within months following the bankruptcy the website shut down and the URLs lapsed.   There is no

7

more business for the Company and there has been none since shortly after the Debtor filed

bankruptcy.   The court believes the Debtor and finds as a fact that she did not intend to hinder,

defraud or delay her creditors, conceal any information, or knowingly make a false oath regarding

liens on her stock in the Company.   The erroneous statement regarding the UCC liens on the stock

and scheduling her parents and the Editor as secured creditors was attributable to a mistake by the

NY Bk Atty in failing to distinguish between the Debtor and the Company.   The Debtor was not

aware of the error until it was pointed out by Plaintiff's attorney.

　　　　With regard to the value of the stock at $75,000, the Debtor testified that she inquired of

friends from her MBA program as to how to value her company and learned that a multiple of 1.5

times advertising revenue was an accepted method of valuation.   She simply multiplied the

previous year's advertising revenue of $50,000 by 1.5 to arrive at $75,000.   That was the basis for

her estimate of the value of her stock.   It was not made with any intent to deceive.   Plaintiff notes

that the Debtor neglected to consider consulting income when applying the multiple to advertising

revenue and suggests that the Debtor's stock is more valuable than scheduled.   Of course, that

information is incorrect.   The court finds from the evidence presented that the actual value of the

Debtor's stock in the Company was zero at the time she filed bankruptcy.   The Company had

never turned a profit, in fact it reported huge losses.   The Debtor as the principal employee had

never drawn a salary.   She began looking for another job even before she filed bankruptcy or

shutdown the website.   Since shortly after the Debtor filed bankruptcy the Company has been

defunct.   The estimate of $75,000 based on advertising revenue does not take into account that the

Company had debts of at least $377,000 to Plaintiff, the Debtor's parents and the Editor.   Rather

than understating the value of her stock to keep the trustee from selling it, the court finds that the

8

Debtor overvalued the stock, but did so innocently.   Of course the NY Bk Atty's failure to
distinguish between the Debtor and the Company caused him to incorrectly list the stock on
Schedule C as exempt.   The Debtor had no intention of improperly claiming an exemption.

   As to whether anyone had offered to buy the Company for one million dollars, the Debtor
testified at trial that the statement was made in jest by a business acquaintance in a social setting
before the Company had even launched the website or generated any revenue.   The court finds
that the Debtor's testimony is accurate and that there never was a serious offer of one million
dollars for the Company.

   The Debtor did not schedule a loan receivable from the Company as an asset on her
bankruptcy schedules.   She testified that she has no written loan agreement with the Company and
always viewed the money she put in as equity that would become valuable if the Company ever
made a profit.   The books and records of the Company were not introduced into evidence to show
that the Company treated any part of the Debtor's investment as a loan.   Plaintiff suggests that if
the Debtor's occasional use of Company credit cards for groceries was reported on the Company
tax return as repayment of loans, that there must be a loan.   Otherwise, the use of Company credit
cards should have been treated as income to the Debtor, but she did not report that on her personal
income tax returns.   The proper tax treatment of these minor transactions is not an issue the court
must decide.   The question is did the Debtor knowingly fail to schedule a loan receivable from the
Company as an asset.   The court finds that she did not.

   As to whether the Debtor misrepresented her income and expenses on Schedules I and J
and on form B22, the court finds that the failure to list any wages on Schedule I is correct.   The
Debtor did not receive any income from the Company and the minor use of Company credit cards

December 4, 2012 (10:53AM)

should not have been reported as income.   As to whether the $12,500 per month as regular income from the operation of a business should have been reported on Schedule I and the $10,719 should have been reported as regular expenses for the business on Schedule J, the court finds that any error was committed by the NY Bk Atty and was not a knowing misstatement by the Debtor.   The court believes that the NY Bk Atty, once again, failed to distinguish between the Debtor and the Company.   Corporate income and expenses should not have been reported on the individual Debtor's Schedules I and J.   The Debtor and the Company's CPA provided the NY Bk Atty with all the relevant information.   He made the mistake and the Debtor did not realize it.   As her attorney pointed out at trial, the errors on Schedules I and J lead to the error on form B22 listing wages of $1,781.00 per month, annualized to $21,372.00.   $1,781 is the difference between the corporate income of $12,500 and expenses of $10,719 erroneously reported on Schedules I and J and $21,372 is $1,781 multiplied by 12.

The Debtor filed amended Schedules I and J with her new attorney that attached details of the Company's monthly income and expenses.   That was done because one of the allegations in the complaint was that Debtor should be denied a discharge for failure to itemize the business income and expenses as requested on the form Schedules I and J.   As stated above, the court believes the correct filing would not include the corporate income and expenses on the individual Debtor's schedules.   The allegations of the complaint together with the amended schedules demonstrate that people often treat an individual and her wholly-owned corporation as one, when they should be treated separately.

## DISCUSSION

A discharge under §727 of the Bankruptcy Code provides a fresh start to the honest but

December 4, 2012 (10:53AM)

unfortunate debtor and is to be liberally construed in favor of the debtor.   *Rosen v. Bezner*, 996 F.

2d 1527, 1531 (3d. Cir. 1993).   Denial of a discharge is a harsh remedy and not to be taken lightly.

*Id.*   The burden to prove an objection to discharge is on the Plaintiff.   FED. R. BANKR. P. 4005.

**A. Transfer With Intent To Hinder, Delay or Defraud Creditors.   Section 727(a)(2).**

A debtor who transfers or conceals property, within a year before the petition date, with the

intent to hinder, delay, or defraud a creditor, may be denied a discharge.   11 U.S.C. § 727(a)(2)

(2006).   Courts have recognized several "badges of fraud," useful in analyzing the general facts of

a case.   These "badges" include:

1.  lack or inadequacy of consideration;
2.  the family, friendship or close associate relationship between the parties;
3.  the retention of possession, benefit or use of the property in question;
4.  the financial condition of the party sought to be charged both before and after the transaction in question;
5.  the existence or cumulative effect of the pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors;
6.  the general chronology of the events and transaction under inquiry;
7.  whether the transaction is conducted at arm's length;
8.  whether the debtor is aware of the existence of a significant judgment or over-due debt;
9.  whether a creditor is in hot pursuit of its judgment or claim and whether the debtor knows this; and
10. the timing of the transfer relative to the filing of the petition.

*Adamson v. Bernier* (*In re Bernier*), 282 B.R. 773, 781 (Bankr. D. Del. 2002).

The First Count of the complaint in this case alleges two matters as the basis for a denial of

discharge under section 727(a)(2):

33. Approximately two months prior to the Petition Date the Debtor concealed her property with intent to defraud her creditors when the UCC-1s were filed on behalf of the Debtor's parents and

11

December 4, 2012 (10:53AM)

close family friend in connection with purported loans to the
Company that were made several years earlier, thereby
encumbering the assets of the Company.

35. The Debtor attempted to conceal her interest in the Company
from her creditors by listing the UCC-1s as encumbrances upon
her stock in the Company, rather than as encumbrances upon her
stock in the Company.

36. During the one year prior to the Petition Date, the Debtor
concealed her property with the intent to defraud her creditors
by failing to take a salary from the Company, but instead
directly using Company assets and credit to pay certain of her
personal expenses.

In her brief in support of summary judgment, Plaintiff makes only one argument for denial

of a discharge under section 727(a)(2).

The recording and the listing of the UCC-1s on the Debtor's stock in
her bankruptcy schedules constitutes concealment.   11 U.S.C.
727(a)(2)(A).   The same is true for the false written statements and
false testimony.

The perfecting of liens against the Company's assets cannot form the basis for denying the

Debtor a discharge because that was not a transfer of property of the Debtor, but rather property of

the Company.   *Wachovia Bank, N.A, v. Spitko (In re Spitko)*, 357 B.R. 272, 299 (Bankr. E.D. Pa.

2006).   Plaintiff has failed to distinguish between the individual Debtor and the Company, similar

to the errors made by the NY Bk Atty.   At trial, Plaintiff apparently realized her error and did not

press this allegation of the complaint.

The court has found as a fact that the erroneous listing of the UCC-1s as encumbering the

Debtor's stock in the Company was a mistake by her NY Bk Atty and that the Debtor had no

intention to hinder, delay or defraud creditors.   Also, the court finds that the occasional use of the

12

Company credit cards for groceries was not done with the intent to defraud her creditors or conceal

her income.   Plaintiff's general argument regarding false written statements and testimony will be

addressed specifically below in reference to section 727(a)(4).   There is no cause to deny the

Debtor a discharge under section 727(a)(2).

**B. Concealment of Records.   Section 727(a)(3).**

Section 727(a)(3) provides that a debtor shall not be granted a discharge when "the debtor

has concealed . . . any recorded information . . . from which the debtor's financial condition or

business transactions might be ascertained, unless such act or failure to act was justified under all

the circumstances of the case."   11 U.S.C. § 727(a)(3) (2006).   The purpose is not to induce

immaculate record keeping.   *In re Decker*, 595 F.2d 185, 187 (3d Cir. 1979); *Meridian Bank v.*

*Alten*, 958 F.2d 1226 (3d Cir. 1992).   Rather, the purpose is to give creditors accurate information

concerning the status of debtor's affairs.   *Meridian*, 958 F.2d at 1230.   The "statute also ensures

that the trustee and creditors are supplied with dependable information on which they can rely in

tracing a debtor's financial history."   *Id.*   The test is whether there is available written evidence,

made and preserved, from which the present financial condition of the debtor and his business

transactions may be ascertained.   *Id.* at 1230.

The party objecting to discharge bears the burden of proof.   FED. R. BANKR. P. 4005.   The

Plaintiff must show: 1) that that the debtor failed to maintain and preserve adequate records; and 2)

that such failure makes it impossible to determine debtor's financial condition and material

business transactions.   The burden then shifts to debtor to justify absence of adequate records.

*Meridian*, 958 F.2d at 1232-33.

Whether the debtor has provided sufficient justification depends on what a reasonable

December 4, 2012 (10:53AM)

person would do in similar circumstances.   In determining the sufficiency of the justification, the

court should consider the:   1) debtor's education; 2) debtor's sophistication; 3) volume of debtor's

business; 4) complexity of debtor's business; 5) amount of credit extended to debtor in his

business; 6) any other circumstances that should be noted in the interest of justice.   *Id.* at 1231.

Intent is not a relevant factor.   *Panda Herbal Int'l, Inc. v. Luby* (*In re Luby*), 438 B.R. 817, 830–

833 (Bankr. E.D. Pa. 2010).

> In Count Two of the complaint, Plaintiff alleges:

>> 40. The Debtor has concealed its [sic] financial condition by failing
>> to produce the detailed statements that are required attachments
>> to Schedules I and J of the Petition.

>> 41. The Debtor has concealed many relevant documents requested
>> by the Subpoena.

>> 42. The Debtor has concealed all of the documents requested by
>> Plaintiff in the July 11th Letter.

> In her brief in support of summary judgment related to the scheduling of the UCC liens as

against the Debtor's stock in the Company, Plaintiff argues:

>> The only conclusion that can be made from these false statements is
>> that the Debtor wanted to create the impression that there was no
>> value in the stock for creditors, and thus, that the stock should be
>> exempt from the bankruptcy estate.   Such attempts constitute false
>> statements and concealment.

As the court has found, the NY Bk Atty erroneously listed the Company's income and expenses on

the Debtor's Schedules I and J; therefore, there was no need to attach detailed statements.

Nevertheless, after the Debtor retained new counsel she filed amended Schedules I and J that

included the details of the Company's income and expenses.

14

The Debtor produced voluminous records in discovery of her personal and corporate financial affairs including tax returns and bank statements.   Plaintiff has not identified any particular document requested in the Rule 2004 subpoena or the July 11th Letter that the Debtor has not produced.   The Debtor did not withhold any information sought in the Rule 2004 subpoena nor in the July 11th Letter, except the identity of the Company's advertising customers from 2009. Any delay in producing documents was promptly remedied long before trial and Plaintiff did not have to resort to discovery motion practice to receive the voluminous records Plaintiff produced. The withholding of customer names was justified under the circumstances.   If Plaintiff had a legitimate reason for requesting the customer names from 2009 she could have moved to compel disclosure, but she failed to do so.

Scheduling her stock in the Company as being subject to UCC liens was erroneous as the Debtor concedes; however, the court has found that there was no intent to deceive and no intent to understate the value of her stock.   Quite the contrary, the court is convinced that the stock was worthless.   There is no cause to deny the Debtor a discharge under section 727(a)(3).

### C.   False Oath.   Section 727(a)(4).

Under §727(a)(4) the court shall not grant a discharge when "the debtor knowingly and fraudulently, in or in connection with the case, . . . made a false oath or account.   11 U.S.C. § 727(a)(4)(A).   In order to deny a debtor a discharge under section 727(a)(4)(A), the plaintiff must show that 1) the debtor made a false oath or statement; 2) the debtor knew the statement was false; 3) the debtor made the statement with the intent to deceive; and 4) the statement was material to the bankruptcy case.   *Panda Herbal Int'l*, 438 B.R. at 833; *Winograd v. Karpo* (*In re Karpo*), Ch. 7 Case No. 09-38892-JHW, Adv. No. 10-1132, 2011 WL 3034486, at *14 (Bankr. D.N.J. 2011).

15

Further, "the misrepresentation must be willful and intentional."   *Id* at \*14.   An honest mistake

will not bar the debtor a discharge.   *Id.*

Count Three of the complaint contains one, non-specific allegation:

> 47.   The Debtor has, in her testimony at the 341 Meeting and/or at
> the Deposition, knowingly and intentionally made false, inaccurate
> and/or misleading statements while under oath.

In Point I. B. of her summary judgment brief the Plaintiff identifies six allegedly false

statements made under oath:

> 1. Schedule B listing her stock in the Company as subject to UCC liens.
>
> 2. Schedule I including the Company income but no income for herself.
>
> 3. Testifying that her use of Company credit cards was treated as repayment of
>
> loans but not listing any loan receivable on Schedule B.
>
> 4. Schedule J including the Company's expenses.
>
> 5. Form B22A Means Test statement inaccuracies.
>
> 6. Testimony at the 341(a) meeting denying any offer to purchase the Company
>
> then claiming that someone's offer of one million dollars was in jest.

The court has found as fact that the errors and inaccuracies on the schedules and Form

B22A were made by the NY Bk Atty, that the Debtor was unaware of the errors or inaccuracies,

and that she had no intention of making false statements on her bankruptcy filings.   Plaintiff

argues that the Debtor may not blame her attorneys for the errors on her schedules.   The leading

decision on this issue is a fifty-year old decision of the Third Circuit, *In re Topper*, 229 F.2d 691

(3$^d$ Cir. 1956).   In reversing a decision of the district court and the referee denying a discharge, the

court of appeals wrote:

December 4, 2012 (10:53AM)

> The bankruptcy schedules are prepared by counsel and indeed the
> Bankruptcy Act provides for the payment of a fee for counsel for the
> preparation of schedules.   It is entirely understandable that a
> bankrupt may be guided by the opinion of his counsel as to what
> comes within the meaning of the provisions of the Bankruptcy Act –
> specifically what shall be included in the Schedules.   We have held
> that the advice of counsel may be an excuse for an inaccurate or
> false oath:   *Levinson v. United States*, [263 F. 257 (3d Cir. 1920)],
> supra, and other Circuits have also done so: Dilworth v. Boothe, 5
> Cir., 1934, 69 F.2d 621; Thompson v. Eck, 2 Cir. 1945, 149 F.2d
> 631.   In the latter case the Court stated, at page 633: 'There was
> proof that the bankrupt made out his schedules on his attorney's
> advice.   This is ordinarily enough to show that the necessary
> (fraudulent) intent is lacking.'   See also 1 Collier, Bankruptcy, Sec.
> 14.23 (14th ed. 1940).

229 F.2d at 693.   Chief Judge Burns recently applied the *Topper* rule in *Rios v. Shafer* (*In re Shafer*), 2010 WL 1286427 (Bankr. D. N.J. 2010) (omissions on statement of financial affairs excusable because of assistance from attorney).

The cases cited by Plaintiff are distinguishable.   In *In re Mascolo,* 505 F.2d 274 (1st Cir. 1974) the court, citing *Topper* wrote, "We agree that an explanation by a bankrupt that he had acted upon advice of counsel who in turn was fully aware of all the relevant facts generally rebuts an inference of fraud … But we cannot find that Mascolo or his attorney ever offered such an explanation ..."   *Id* at 277.   In *In re Bobroff*, 69 B.R. 295 (E.D. Pa. 1987), the district court upheld the bankruptcy court's finding that the debtor intentionally omitted and undervalued his assets. The bankruptcy court rejected the debtor's contention that he relied upon advice of a lay bankruptcy counselor, not an attorney and found the debtor's testimony evasive.   Also, the debtor actually hid valuable paintings in his home and at friends' homes that were later discovered by the trustee.   The omissions and undervaluations were evident and should have been known by the debtor.

December 4, 2012 (10:53AM)

The court in *In re Weintraub*, 171 B.R. 506 (Bankr. S.D.N.Y 1994) did not believe the debtor, a doctor, when he claimed that he relied on his attorney in intentionally omitting former patients with malpractice claims from his schedules.   The attorney testified that the doctor specifically decided not to include any patients on his list of creditors.   Similarly, in *JP Morgan Chase Bank, N.A. v. Koss* (*In re Koss*), 403 B.R. 191 (Bankr. D. Mass) where the debtor undervalued his household furnishings by hundreds of thousands of dollars, the attorney "testified – credibly – that the Debtor never told her that the furniture in his home was recently purchased at great cost."   *Id.* at 214.   The last case cited by the Plaintiff, *Cadle Co. v. King* (*In re King*)*, 272 B.R. 281 (Bankr. N.D. Okla. 2002) did not involve a debtor who claimed that the errors on his schedules were made by his attorney.   In this case, the Debtor fully informed her NY Bk Atty of all the facts and reasonably relied upon him to fill out the bankruptcy forms correctly.   Under the *Topper* rule any inaccuracies are excusable and not the product of the Debtor's intentional misrepresentation or concealment.

The statement at the 341(a) meeting denying receipt of an offer to purchase the Company was not false.   The court has found that the testimony about the lack of offers to purchase the Company was true.   The million dollar statement by the Debtor's acquaintance was in jest. Regarding the credit card use, the Debtor testified truthfully at the 341(a) meeting and at her examination under Rule 2004.   She used the Company credit cards occasionally to buy groceries. It was not an attempt to hide her income.   The fact that the Company treated these credit card purchases as loan repayments was truthfully testified to by the Debtor.   The correct treatment for tax purposes is not an issue for this court.   There is no cause to deny her a discharge under section 727(a)(4).

December 4, 2012 (10:53AM)

### D. Failure To Explain Loss of Assets. Section 727(a)(5).

Section 727(a)(5) provides that the court shall not grant a discharge where "the debtor has

failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's

liabilities." 11 U.S.C. § 727(a)(5) (2006). Plaintiff has the initial burden of showing that the

Debtor had assets that are no longer available. *Winograd*, 2011 WL 3034486, at *12-13.

Similar to subsection (a)(3), fraudulent transfer or concealment need not be shown and intent is not

an element. 6 COLLIER ON BANKRUPTCY 727.08 (Alan N. Resnick & Henry J. Sommer eds. 16th

ed. 2011). Once the plaintiff establishes a prima facie case (i.e. that the debtor had assets before

bankruptcy but no longer had them at the time of bankruptcy), the burden shifts to the debtor to

explain "satisfactorily" the loss of those assets. *See id.* The explanation must appear reasonable.

*Panda Herbal Int'l,* 438 B.R. at 834. Further, an estimate of what happened to the assets, even

when plausible, may be rejected when it is not supported by documentation. *See, e.g., Chalik v.*

*Moorefield* (*In re Chalik*), 748 F.2d 616 (11th Cir. 1984) (rejecting as insufficient the debtor's

undocumented assertion that he had lost money on two failed corporations and had spent money on

living expenses); *see also First Texas Sav. Ass'n, Inc. v. Reed* (*In re Reed*), 700 F.2d 986, (5th Cir.

1983) (affirming bankruptcy court's finding as unsatisfactory debtor's explanation that almost

$20,000 was lost in undocumented expenses and gambling debts).

Count Four of the complaint alleges:

> 51. The Debtor has failed to provide an explanation or
> documentation evidencing, the purported $20,000 decline in her
> IRA account from January 2011 until the Petition Date.

> 52. The Debtor has failed to provide an explanation or
> documentation evidencing, the deposit and use of the Suarez Loan.

> 53. The Debtor has failed to provide an explanation as to how the

December 4, 2012 (10:53AM)

> Company, that purportedly received over $400,000 in loans in the
> past four years is currently valued at $75,000.
>
> 54.   The Debtor have [sic] failed to provide an explanation or
> documentation as to how she is satisfying her ongoing liabilities,
> including, but limited to her living expenses.

In her summary judgment brief Plaintiff argues:

> The above demonstrates the efforts of the Debtor to conceal and
> mislead regarding the valuation of the stock.   Further, if the
> Company had experienced a sharp decline in advertising revenue,
> thereby decreasing the stock value, then the Debtor has failed to
> provide an explanation.

At trial, Plaintiff conceded that the Debtor had documented her IRA withdrawals and had reported the same on her tax returns; therefore, Plaintiff abandoned any claim regarding the decline in the IRA.   In discovery the Debtor produced corporate bank records showing the receipt of the Suarez loan proceeds and the disbursements thereafter.   At trial, the bank statement showing the receipt of the Suarez loan proceeds was admitted into evidence.   Plaintiff made no argument regarding the deposit and use of the Suarez Loan, so that charge was, apparently, abandoned as well.   Regarding the value of the Company despite having received over $400,000 in loans, the simple explanation is that the Company never made a profit, reported huge losses on its tax returns, still owes all those loans, and is defunct.   The court accepts that the stock in the Company is worthless.   As to the Debtor's living expenses, she testified that she used her savings, including her IRA, and a line of credit secured by her residence to pay her household expense while she tried to establish her business.   The court accepts her testimony as true.   There is no basis to deny a discharge under section 727(a)(5).

December 4, 2012 (10:53AM)

***E. Refusal To Obey An Order. Section 727(a)(6).***

Section 727(a)(6) provides:

> (a) The court shall grant the debtor a discharge, unless

>> (6) the debtor has refused, in the case –
>> (A) to obey any lawful order of the court, other than
>> an order to respond to a material question or to
>> testify;
>> (B) on the ground of privilege against
>> self-incrimination, to respond to a material question
>> approved by the court or to testify, after the debtor
>> has been granted immunity with respect to the matter
>> concerning which such privilege was invoked; or
>> (C) on a ground other than the properly invoked
>> privilege against self-incrimination, to respond to a
>> material question approved by the court or to testify;

Subparagraph (A) of 727(a)(6) will deny a discharge where "the debtor has refused, in the case - to obey any lawful order of the court, other than to respond to a material question or to testify . . . ."  11 U.S.C. § 727(a)(6).   Thus, to deny a debtor a discharge under section 727(a)(6)(A) four elements must be met:   1) the court issued an order directed at the debtor; 2) the order was lawful; 3) the order did not require the debtor to respond to a material question or to testify; and 4) the debtor refused to obey the order.   *Stapleton v. Klika* (*In re Klika*), 2007 WL 842073 *2 (Bankr. D. Del. March 16, 2007).   *Panda Herbal Internat'l, Inc. v. Luby* (*In re Luby*), 438 BR 817 (Bankr. E.D. Pa 2010).   A denial of discharge under section 727(a)(6)(A) must be based on a willful and intentional refusal to obey a lawful order of the court.   A mere failure, inability or mistake is insufficient to warrant denial of discharge under section 727(a)(6)(A).   *Wilmington Trust Co. v. Jarrell (In re Jarrell)*, 129 B.R. 29, 33 (Bankr. D. Del. 1991).

Count Five of the complaint states the following as warranting a denial of discharge under

December 4, 2012 (10:53AM)

section 727(a)(6):

> 58.  The Debtor has failed to provide required information on Schedules I and J of the Petition.

> 59.  The Debtor has failed to provide information requested pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure regarding her financial condition and the financial condition of the Company; whether requested pursuant to the Subpoena or the July 11th Letter.

The court has found that Schedules I and J should not have included the Company's income and expenses, so the failure to attached detailed statements was not improper.   Any other errors in the schedules were innocent and have been dealt with under section 727(a)(4) above.

No evidence of refusal to obey any specific order was presented at trial.   In her summary judgment brief, Plaintiff argues that, "The 2004 Notice had the effect of a Court Order."   The Debtor responded fully to the Rule 2004 subpoena, except for the identity of the Company's advertising customers from 2009.   Plaintiff never sought an order compelling the Debtor to supply those names, so there was never a refusal by the Debtor to obey an order or to respond to a material question approved by the court.   Plaintiff argues that the Rule 2004 subpoena should be treated as a court order but cites no authority for the proposition.   Reported decisions are to the contrary.   *Merena v. Merena* (*In re Merena*), 431 B.R. 792 (Bankr. D. Mont. 2009) aff'd 2009 Bankr. LEXIS 5049 (9th Cir. BAP 2009); *The Cadle Co. v. Andersen* (*In re Andersen*), 2011 WL 5835099 (Bankr. D. Mass. 2011); *Smith v. Seferian*, 2011 WL 6753989 (N.D. Ill. 2011).   In light of the policy favoring a fresh start and the extreme remedy of denial of discharge, it would seem that the statute requires an order specifically directing the debtor to answer a particular question and the debtor refusing to do so.   That did not occur in this case.

December 4, 2012 (10:53AM)

## <u>CONCLUSION</u>

Plaintiff has not met her burden of proof under section 727.   There is no cause to deny the

Debtor a discharge.   A judgment of no cause will be entered in favor of the Defendant and order

for discharge will be entered.

Dated:   December 4, 2012                    **<u>/S/Raymond T. Lyons</u>**
                                             United States Bankruptcy Judge

December 4, 2012 (10:53AM)